[Civ. No. 5495. Fourth Dist. Sept. 24, 1957.]

LAWRENCE W. BRAMWELL, Respondent, v. AIRPORT BLUE PRINT COMPANY (a Corporation) et al., Appellants.

Albert H. Allen, Michael J. Fasman and Leonard S. Wolf for Appellants.

Oakes & Horton and Harry H. Horton, Jr., for Respondent.

GRIFFIN, Acting P. J.—In this action for an injunction and damages plaintiff and respondent claims that defendants and appellants, after the sale of a business known as Economy Blue Print and Supply Company in San Diego, violated an agreement not to engage in the same or similar business in San Diego County for 10 years. Previous to April 24, 1950, defendant John F. Mawson owned and operated the business under that name, making blue prints, Diazo prints, photostat work, and selling the necessary material for that purpose. On that date he entered into an agreement for the sale of this business, located at 1127 Fourth Avenue, to plaintiff for $45,000. In paragraph 12 thereof it provides that defendant Mawson agrees not to engage in a similar business in San Diego County for 10 years. He further agreed that if plaintiff should install a lithograph or offset printing plant that Mawson would not engage in such business but might solicit such business to be done in his plant which he had in Los Angeles. Thereafter, plaintiff took over the business and for certain purposes, in addition to the Economy Blue Print and Supply Company formed corporations known as San Diego Blue Print Company, San Diego Engineers' Supply Company and San Diego Reproduction Products Company. The business operation of the Economy Blue Print and Supply Company was segregated and certain branches of that work were assigned to these respective corporations, all doing business at the same location and under the same management. Plaintiff and his wife were the sole stockholders in said corporations.

Defendants now argue, in this respect on this appeal, that plaintiff, as an individual, was not the proper party plaintiff in this action since the corporations are now conducting the business operated by Bramwell, and claim that the agreement was not enforceable by Bramwell individually, citing such authority as 12 California Jurisprudence 2d 768, section 213; Business and Professions Code, section 16601; *Bell* v. *Ellis*, 33 Cal. 620; *Graca* v. *Rodrigues*, 33 Cal.App. 296 [165 P. 1012] ; and *Ward-Chandler Building Co.* v. *Caldwell*, 8 Cal.App.2d 375 [47 P.2d 758].

The trial court considered this question at the trial and on a motion for new trial. In its written opinion and findings it stated that plaintiff had not assigned his agreement with Mawson in reference to the sale of the business of Economy Blue Print and Supply Company in San Diego to anyone; that since plaintiff, individually, and as owner of the stock of the corporations, did manage the same business and continued to carry it on as before and in the same fashion, he did have sufficient interest to maintain this action. We are in accord with this conclusion.

Section 16601 of the Business and Professions Code provides:

"Any person who sells the good will of a business, . . . may agree with the buyer to refrain from carrying on a similar business within a specified county . . . in which the business so sold, . . . has been carried on, so long as the buyer, or any person deriving title to the good will or shares from him, carries on a like business therein." See also *Ragsdale* v. *Nagle,* 106 Cal. 332 [39 P. 628] ; *Martinez* v. *Martinez,* 41 Cal. 2d 704 [263 P.2d 617] ; *Consolidated Photographic Industries* v. *Marks,* 109 Cal.App.2d 310 [240 P.2d 718] ; and *Firth* v. *Marovich,* 160 Cal. 257 [116 P. 729, Ann.Cas. 1912D 1190].

The evidence shows that defendant Mawson did, in fact, enter into a like business in San Diego County but it is claimed it was through instrumentalities such as Airport Blue Print Company, Economy Blue Print and Supply Company, Economy Lithograph Company, all corporations, and Economy Blue Print and Supply Company of Los Angeles, a partnership, of which latter company Mawson and his wife were the sole owners.

The court found generally that the defendant Airport Blue Print Company, a corporation, is and was, during the period in question, doing business in San Diego County; that said corporation is and was dominated by and is the *alter ego* of Mawson, was formed by him for the purpose of carrying on activities in San Diego County which Mawson, in his agreement, agreed not to perform in said county; that Mawson and wife owned 100 per cent of the corporate stock of Economy Blue Print and Supply Company, a corporation; and that Airport Blue Print Company purchased about 90 per cent of its material from the Economy corporation, at its plant in Los Angeles. It concluded that defendants Mawson and Airport Blue Print Company be enjoined from engaging in said business or one similar thereto in San Diego County, and from

using the name Economy Blue Print and Supply Company therein, so long as plaintiff Bramwell, his successors or assigns, are engaged in such business in San Diego County, not to exceed 10 years from April 24, 1950. Judgment was entered accordingly.

██ It is defendants' claim in this respect that the evidence is not sufficient to show that defendant Airport Blue Print Company was the *alter ego* of defendant Mawson, the argument being that Mawson only owned 40 per cent of the stock in Airport Blue Print Company; that he held no office therein and did not actively solicit accounts for that corporation in San Diego; and that accordingly there was no sufficient showing of unity of interest and ownership therein by him. An examination of the evidence indicates that the trial court's findings in this respect are supported. It appears that Mawson and defendant Grosart were friends and business partners of long standing. They discussed the question of their operating in San Diego County as a partnership after the agreement not to engage in a similar business in San Diego County was signed by Mawson. They also considered whether there was a possibility of their being enjoined under the agreement and they concluded that they could legally operate as a corporation rather than as individuals. The Airport Blue Print Company was then established. The directors were Mawson, Grosart and their attorney. Grosart and Mawson each owned 50 per cent of the stock. Blueprinting equipment of Economy was delivered to Airport Blue Print Company, purportedly under a contract of sale, and its vehicles were loaned to Airport Blue Print Company. Several unpaid demand notes were found to be executed in favor of the Airport company by Mawson ($15,464.65) and Grosart ($4,000). It affirmatively appears that the Airport company had been financed almost entirely by Mawson personally, or through loans made by Economy, and that Mawson obtained financial control over the Airport corporation. Thereafter, the manager of Economy came from Los Angeles and solicited an aircraft firm in San Diego, a customer of plaintiff, for its business. Two cards were presented, one "Economy Blue Print & Supply Co., Los Angeles" and the other "Airport Blue Print Company." Other similar solicitations were shown. So-called San Diego branch offices were then opened in San Diego by Airport. Defendant Economy Lithograph Company was another of the Economy companies solely owned by Mawson and his wife. The evidence is sufficient to show that Airport Blue Print

Company, a corporation, was formed for the purpose of enabling Mawson to circumvent his covenant with the plaintiff, and that Mawson dominates and controls the said corporations. Under the circumstances the order of the court granting the injunction was authorized. (*Consolidated Photographic Industries* v. *Marks,* 109 Cal.App.2d 310 [240 P.2d 718]; *H. G. Fenton Material Co.* v. *Challet,* 49 Cal.App.2d 410 [121 P.2d 788]; *Akers* v. *Rappe,* 30 Cal.App. 290 [158 P. 129]; 93 A.L.R. 139; 36 Am.Jur. p. 550, § 73; *Stark* v. *Coker,* 20 Cal.2d 839 [129 P.2d 390]; *H.A.S. Loan Service, Inc.* v. *McColgan,* 21 Cal.2d 518 [133 P.2d 391, 145 A.L.R. 349].)

Judgment affirmed.

Mussell, J., concurred.

A petition for a rehearing was denied October 22, 1957, and appellants' petition for a hearing by the Supreme Court was denied November 20, 1957.